My name is Les Bessinger, and I am from Finnegan-Hiddleston, and I represent the account of Mr. Norvell. Mr. Norvell has raised several statutory issues in this appeal. When Mr. Norvell came before the Court of Appeals and Veterans Claims, he presented a real case for controversy, regarding specifically whether there were Rolex medical quality assurance records that exist, as well as whether the VA had an obligation under 51.3a and 50.75 to assist Mr. Norvell in obtaining such records. How can they assist the records firm with this? Well, that's one of the questions, Your Honor, that the Veterans Court is really not in a proper position to assess. That, specifically because that fact goes to, and is the type of fact that goes to the merit of Mr. Norvell's claim, is the precise type of fact that should have been dealt with by the court, who is in that specific type of position. But it's a jurisdictional fact, and if there is no dispute over the fact, it's an undisputed fact that the records don't exist, why can't the Veterans Court decide it? Because, respectfully, Your Honor, at this point, there is a dispute over this, whether there is something that exists. Well, just saying there's a dispute doesn't make one. What evidence do you have to suggest that those records exist? They're within the control of the VA, and they're saying that they have affidavits that there are no such records. This is true, but 7261c specifically provides that that is not within the realm of what the Veterans Court should have got to,  and that is something that the board is better suited for. But it gets back to the point, if there's no dispute on any aspect of the merit of the claim, why cannot the Veterans Court reach it? And is there a dispute? How could there be a dispute? I believe, Your Honor, I believe there can be a dispute here, because that issue has not been properly vetted, because the Veteran has not had… What more can be vetted? They've asked the Secretary to come up with records. The Secretary has gone to his repository and says they are not there. There is nothing. Mr. Rombaugh has not had an effective opportunity to challenge those records, has not had an effective opportunity… Challenge the records. They don't exist. You can't challenge something that doesn't exist. Or challenge whether they may have existed at one time. How would that matter? Because at this point, there may be records that still are there that may not have been sought out through these affidavits. That's an issue that is best done by the regional office and best heard by… What is the regional office going to do? The regional office is going to do what? They're going to ask the Secretary to check his records. It's been done. What more can be done? And Mr. Norvell, Your Honor, we expect that Mr. Norvell would have the opportunity to ask those involved, perhaps, with the procedure, whether certain types of records would have been made. It's the opportunity to seek that out. And 7261C does not permit… This is the exact type of thing that 7261C prevents the Veterans Courts… 7261 prevents the Veterans Courts from making merit-based fact-findings. But this is a question of jurisdiction. So the records don't exist. The merits of this case are whether he's entitled to service connection and the extent of his injuries. The merits of this case, whether the doctor committed malpractice or something along those lines, the merits of this case don't have to do with does the document exist or not, such that we then should have compelled its production. That's jurisdiction. But that's where the board is specifically set up, to deal with… To deal with the mayor. How can the board do anything different than what has been done is part of my question. The board could… Do what? Could be able to… Excuse me. The board should be able to hear from Mr. Norvell. Mr. Norvell should have an opportunity. Why? He doesn't know whether there are records. He didn't write quality assurance documents. He didn't see them. They're privileged and confidential. He has no personal knowledge, nor have you alleged any, of whether such records exist. So why should they hear from him on that point? Because I believe that's where this inquiry… Because it goes to the merits of the existence of such documents. It goes to the merits of the claim. It's not merely an equity polling issue like in the case of Eric or in the case of some of the other cases. But if the board hears from Mr. Norvell, what can he tell them that will remedy the problem that the secretary has no records? In this case, Mr. Norvell only had 15 days in which to respond. I think by remaining this down to… What possibly… If he gets more time, what possibly can he say that will change the absence of records? Well, one thing is the board could go out and more thoroughly vet whether there were non-confidential documents out there as well as confidential records. We're looking for the quality assurance records, right? That's what we're looking for. That is true. That is true. They aren't there. Now, what more can we do? And I think that's one of the questions I think that the board can more fully investigate is by having some more thorough vetting of that issue. I don't understand. What more thorough vetting could there be? We look. There are no documents. What… I'm just confused. What more thorough vetting do we need to have occur? The absence of something is very difficult to more thoroughly vet, it seems to me. This is true. Mr. Norvell didn't have an effective opportunity to come to ask or inquire about what would have happened at the Lexington Medical Facility that could have created records that… Now, at this point, because it's so late in the game, we don't know whether they would have existed. Because the secretary's actions were so late at the 11th hour. But if they existed and were destroyed, how is that at all relevant? I mean, maybe there would be some, you know, very old clerk who seems to recall possibly there could have been some records and they were destroyed in the normal course of business. Why would that be relevant? Why would that have any effect on the outcome of this case? Mr. Norvell should have that opportunity to investigate that. Why? It doesn't affect the merits of this case. If the documents don't exist, what difference does it make if they used to exist but were destroyed 15 years ago? That is one of the underlying and fundamental determinations that the Veterans Court seems to have made. I believe the board and with Mr. Norvell having the opportunity to further investigate this, that the board could then properly make that determination. Why? I just don't understand it. What does your client gain if the documents used to exist but were destroyed 15 years ago in the course of business? How would that better enable him to establish his case? If there are, in fact, no documents that are relevant, that is something that may be the case. But the point I'm trying to make, Your Honor, is that the inquiry into that at the Veterans Court level wasn't… How do you get around our case of Barrett, counsel? Because in Barrett, I believe at page 1041, we discuss in detail the Veterans Court's policy or practice of deciding factual issues relevant exclusively to the jurisdiction question that are not reasonably in dispute. And I don't see how you can phrase any suggestion that there's a reasonable dispute whether these documents exist or not. So why doesn't this fall squarely under Barrett as something the Veterans Court is permitted to do? The question before this court in Barrett had to do with equitable tolling issues. Equitable tolling issues which are not the types of acts that the board would ever have had before. That's distinguishable from this case as far as the existence and content of whatever medical record or quality assurance… Your Honor, the equitable tolling issue in Barrett was whether or not his mental incompetence could toll the time to respond. And his mental incompetence was exactly the merit-based issue regarding whether he should receive funds. How is that less related to the merits than in this case? It still goes to the procedural aspects of what was being held there. The procedural aspects that were dealt with in Barrett differed here on the existence of quality assurance records. Your Honor, let me ask you a question about how you proceeded in the case. Did you, as counsel, seek out to see if there were records and if there were any other repositories? In the written version of Barrett in this case, I would have to… No, I'm just asking you if you did. Me, personally? Personally. Okay. Just for the question, not to say that you had to. No, Your Honor, I did not. Personally. Well, I'm missing the question. Mr. Norvell did request records. The VA should have a duty to go off and investigate that. The fact that there is confidentiality potentially should not obviate the VA's duty to actually go off and have a statutory review to help develop that part of the veteran's claim. There is plenty of express statements that QA records can be non-confidential, and the existence of that, purely, should require that the VA go off and help and assist the VA in developing the facts under 5103A. 5705 does not… Can you… Yes. Thank you, Your Honor. May it please the Court. Your Honor, I've already cheated on the key issue in this case. Your Honor, in the first request, the VA requests form 10-2633, and is that a quality assurance form? It is a quality assurance form, and I do not have the answer, Your Honor. Is it routine that they request it? I do not believe so, because the regular process… That's suspicious. I mean, if the government wants us to adopt a position that quality assurance forms ought not to be available, even for an in-camera form of inspection, to ascertain whether they would have meaningful information and not be privileged, why would the VA, which I assume, as a standard practice, it follows when requesting these forms, request one of these very forms? That is really puzzling to me. Well, Your Honor is correct. The VA may move, as well as the regulations, make it clear that these quality assurance records should not be requested. I do not know why in this instance. Of course, Your Honor is well aware this goes on all over the country. There's many different offices, and, in fact, the procedure should have been not to request… But they call it a specific form of help by number. Is it just really? I'm troubled. It's an incident form, and it is probably the most common form that is used in questions where there might be an issue of medical malpractice. Why in that particular office they ask for it, I don't know. The response should have been… Is that because there's some sense that there probably was a problem here? Not that I'm aware of, Your Honor. There's simply nothing in this record. Why is everyone focusing in on it if there is no reason to believe there's a problem? Well, there were progress notes in this case, as both parties indicated in their briefs, that indicate that at one point in time there was a question raised by some of the treating physicians and nurses that the post-surgery pain that Mr. Norvell had may have been related to the surgery. That's why this whole question has come up. But Dr. Connor, who reviewed these records both in 2003 and 2005 and did what the Board called a longitudinal study, indicated otherwise. So there was divided evidence, disputed evidence as to whether or not the post-surgery pain that Mr. Norvell had was related to his surgery. So that's why I presume his counsel suspected, well, if this pain is connected to the surgery, maybe there's a malpractice question. I simply don't know the answer to Judge Moore's question as to why initially it was requested. Because I agree, pursuant to normal VA procedure, it should not have been requested because had there been such a record, the answer should have been, and I presumably would have been, you can't have this record because it's a quality assurance record. It can't be produced. But you would like a blanket rule that all quality assurance records are off limits. And what about Bethel, the District of Colorado case that specified when you look at your own regs, there are four descriptors for quality assurance documents. And at least the suggestion out of the District Court of Colorado was not all quality assurance documents meet one of those four regulatory definitions, and therefore not all quality assurance documents satisfy the confidential and privileged nomenclature or are deserved to be treated as such. So why shouldn't there be sort of an in-camera review that could take place to ascertain whether this is a quality assurance document that is or is not properly privileged according to your own regs? Your Honor, let me start with the nomenclature. By definition, a quality assurance record is a document that is confidential and privileged. If a document, as in the Bethel case, is not privileged or confidential, it is by definition not a quality assurance document. Therefore, the documents in Bethel were not quality assurance documents and were not confidential. They were, for lack of a better term, mistakes. Those documents, because they did not meet the criteria of the regs, should have been in the claims law because they weren't quality assurance records. I'm a little nervous that this quality assurance notion is used a lot like the confidential nomenclature we get on breaks. Overused all the time. And so if that's the case, if, as in Bethel, it is not uncommon for things to be designated privileged, like in a litigation where you need to pull out that privilege law, and an in-camera review shows that at least 20% of most things designated privileged weren't properly done so. So if that's the case, don't the veterans have a legitimate right to have someone, I mean, given the whole purpose of our veteran system to be proclaimant, is it really important that we make sure that if mistakes are routinely being done, overprivilegizing these documents, that maybe this is one of those accommodations that ought to be made to make sure? Well, no, Your Honor. First of all, there's no reason to believe this is something that happens commonly or that it's 20% of the time it occurs. It very rarely ever happens. Apparently it happened in Bethel, although I would note in Bethel it was a procedural error. There's no question in Bethel that those documents. Your Honor, you seem to be testifying. Do you have record evidence that this doesn't happen as a regular course? I certainly do. I just don't want to go and I don't see how you can make this argument. I have lips. You know about it. Oh, I certainly have lips. You know, probably know, maybe you don't know, but we've had a number of cases where the government has said, including as they stood right here, that certain records of these kinds of cases do not exist. And counsel has gone out and clearly sourced and found them and brought them into the court. Your Honor, I certainly am aware of that. And these are not, this is not a case where the records don't exist. We have all the records from this claims file. They're before the court. They were before the court. They were before the RO. This is very specific to quality assurance records. But these are documents that are maintained separately from the claims file. And in response to Your Honor's question, there is a process that the VA goes through for people who work specifically with quality assurance records to ensure that all the documents that are in the quality assurance record are, in fact, quality assurance records. In Bethel, those were supposed to be quality assurance records. What happened is procedurally the I's were not dotted and the T's were not crossed in terms of assuring that the proper procedures were followed as set forth in the regs. That is a mistake. Your Honor is correct. I can't testify. I do not know what percentage of documents are in quality assurance records that are, in fact, not quality assurance records. It's a very different question from the underlying medical records of Mr. Norvo. I would add that there's no evidence in this case in response to Judge Rader's question that there were ever any quality assurance records created in this case. So the substantive question that Mr. Norvo raises may be something that this court wants to consider in another case, but not in this case. He's only asking for it to go back and have it be bargained, which hasn't been done yet. Well, the Veterans Court in this case issued an order. The Veterans case was concerned because the report did make a finding here that there was no evidence in the record of any quality assurance records. And the Veterans Court wanted to satisfy itself that the government did a search and made an affirmative representation that, in fact, there were no such records. The Veterans Court did that. The Veterans Court also stated in its order that it gave Mr. Norvo 15 days to respond to any problems it saw with the government's search. And what Mr. Norvo responded to in those 15 days was not to say that there were any problems with the search, that there was any indication that, in fact, there were quality assurance records. All he said was he disputed the procedure, as he's doing here today, with the Veterans Court making some factual findings on its own prior to the court having the determination for that. Yeah, but he didn't. One of the things that has made me nervous, and it isn't something that was discussed in the first few minutes of the oral argument earlier, but I'm not entirely sure, and I hope in our rebuttal, opposing counsel can clarify for me, but I'm not entirely sure, but I thought I understood them to also be making an argument that the Secretary's affidavit was insufficient in the way it suggests what are and are not available, that maybe there is a factual finding about whether any quality assurance documents are available because the way the Secretary's affidavit is worded, it is very precise, almost too precise, and necessarily could exclude the consideration of non-confidential or something else. I understood them to be raising what they thought possibly was a dispute of fact over what the Secretary is in fact saying does and does not exist. I think they're raising, again, before this Court, but did not raise it before the Veterans Court, and therefore waived that argument. They're saying that, well, maybe there was a further search that the Secretary could have done. Whenever you're in the position that we're in here trying to prove a negative, there's always something more you could do. For example, you could go through every quality assurance record in every location in the United States, in every VA hospital, and maybe find a record related to Mr. Norvell. So they're indicating that perhaps a more thorough search could have done. I also want to clarify. But isn't that exactly why maybe something like this should be taking place at the Board and not the Veterans Court, where there are opportunities for cross-examination? Opportunities exist for more thorough fact findings and investigation at the lower levels than they do at the appellate levels. Well, Your Honor, there's two responses to that question. The first one is this is something that Mr. Norvell waived by not raising it before the Veterans Court. We would, however, agree with Your Honor that had he raised it and there was a reasonable dispute, a reasonably disputed fact. When did you want him to raise this, just so I understand? Before the Veterans Court. When the Veterans Court issued it in order, the Veterans Court said, Government, you come forward with affidavits, and you state in those affidavits whether or not there are any quality assurance records relating to Mr. Norvell or to a search. The government then came back with affidavits, clearly indicating both in the affidavits and in its filing that there were no such records. The Veterans Court further stated in its order Wait, did he then have an opportunity to respond? Exactly, Your Honor. The Veterans Court ordered that Mr. Norvell, you have 15 days to respond to the affidavits that the government produced and to state in those, in your response, what problems, if any, you have with the government's affidavits. Was he represented by counsel? Yeah, he was represented by the Veterans Association there, the organization that represents it. And he filed a pleading. And that pleading is attached to our brief in the appendix. And what he said in that pleading, he did respond. But all he complained about was the fact that the Veterans Court made the finding as opposed to the court. He did not complain anything about the thoroughness of the search. He assumed that the search, he didn't say anything about the quality of the search. He simply said, we want the Veterans Court to make the finding, the board to make the finding, and the Veterans Court shouldn't. He didn't complain about the breadth of the search or the thoroughness of the search at all. Isn't that exactly why the board should make the finding and not the Veterans Court? If there was a reasonable dispute, yes. Barrett says that the board, that the Veterans Court can make findings as to jurisdiction. But it should only do so. We state this in our brief when there's not a reasonably disputed fact. You actually made Barrett a little narrower than I think Barrett necessarily is. I mean, you suggested that you thought the Veterans Court didn't have the authority to make jurisdictional fact findings if there is any reasonable dispute over facts. And I don't think Barrett necessarily adopts that position. Your Honor, I agree totally with that. That's simply our position that we're taking the case. Barrett could be read. Barrett could be read to allow that. We're simply saying that it's not a reasonably disputed fact that Barrett's right. But I looked back at all of the underlying information on Barrett, and I didn't see this issue being fully fleshed out or developed by Barrett. So Barrett certainly talks about the Veterans Court's practice of deciding these facts, but Barrett does not, nor did I see it raised in Barrett, correct me if I'm wrong, the issue of whether it's appropriate for the Veterans Court to make this decision in the first instance. So you can't expect a court to decide whether a practice is appropriate if that issue is not on appeal before it, correct? Well, the Barrett Court certainly stated in two different instances. The one Your Honor indicated on Your Honor cited, too, that's on page 1041 of the decision. And also in the footnote double asterisk, the Barrett Court went on even further to state that the government and, in fact, the claimant are required to produce facts relevant to jurisdiction. We're simply saying that that rule, which is an exception to the normal rule regarding marriage, should only apply when there's not a reasonable dispute. Wait, no, but that's all going to the point which was decided in Barrett, which is who has to come forward with evidence of what Barrett means. That's right. But none of that goes to whether the Veterans Court is permitted in the first instance to be deciding these fact questions. Well, I think it's a few. And that is not an issue that was raised in Barrett. So I don't see how we would interpret this case as a carte blanche holding that the Veterans Court is free to make fact questions in the first instance. But the Federal Circuit, what this Court stated in Barrett was that this is what the Veterans Court does, and it's a clear implication from what Barrett is saying, what the Federal Circuit is saying in this case, that they're blessing the procedure that they're using. Where does the blessing come in? Show me which line. I think the way they're saying it. Take our blessing seriously. In fact, when the Veterans Court determines that it needs additional information to decide jurisdictional issues, this is what it does. I would think that if the Court was not approving of that procedure, it would have said so there. Well, but if no one appealed it, if no one suggested that practice was inappropriate, why would the Court go through and analyze it? We don't make up issues. It's not. Okay. The other point I'd like to make with respect to Mr. Norvell's comments about non-confidential quality assurance documents, those are not documents that would be in any location other than within the quality assurance file. They are on the stakes. They are documents that have been designated as quality assurance documents, but actually don't meet the criteria as in Beth-El. It's not a situation where there might be some other third location where they could be. So you're saying the Secretary's statement that there exists no confidential quality assurance documents should also be interpreted as there exists no non-confidential quality assurance documents? Well, the Secretary's statement that it could locate no quality assurance documents is a statement that it could locate no quality assurance documents or quality assurance documents that are erroneously placed in that file that are actually not quality assurance documents and are not confidential. It says there are no confidential and privileged VA medical quality assurance records. That's the statement. The statement is there's no quality assurance records. Right. Those words are redundant is what I'm saying. Confidential and privileged quality assurance documents are the same as quality assurance documents because if they're not confidential and privileged, they are not quality assurance documents, and they shouldn't have been in the file in the first place. That's what I'm saying. There's no distinction being made there. And I see that my time is up, and if the Court has no further questions, we would ask that this Court affirm the decision of the Federal Institute. Thank you. So, Counsel, in your short time, you mind starting with the issue that I was trying to throw at you a few minutes ago? Which is, are you disputing whether or not the affidavits factually represent the nonexistence of any records? You're talking about the affidavits you're looking at? Yes. Are you raising a dispute, a factual dispute over the affidavits and whether or not they establish no reasonable belief that the records don't exist? You're on mute. You bring up a very good point. My opposing counsel just got up here and relayed to us how quality assurance records are synonymous with confidentiality and privilege. And that's the way in which those terms have been used, and as they appear in those affidavits, certainly brings up a reasonable dispute. I believe Your Honor has referenced certain regulations, as you recall, talking about the non-confidentiality of certain quality assurance records. I would point the Court to 38 CFR 17501G. That particular regulation sets forth how a document can meet all the other requirements. And if I called it a quality assurance record, but that it is particularly non-confidential. Here there is certainly an argument, there's a reasonable argument that perhaps that was not done. Do you think the Secretary has deliberately withheld some records? Whether the Secretary deliberately withheld them or not, I believe that there is still a proper inquiry that is yet to do that. The Board is really the proper place to do that with terms that fully vet that issue, whether they're confidential or non-confidential documents have been searched out. Opposing counsel also brought up the concept of waiting. You pointed us to G, because I think this is an important point you're suggesting. Not everything that might be in a quality assurance designation is in fact confidential. But when you go through G1, 2, 3, 4, and you look at all of them, it seems to me that the things they're saying are not confidential are things that would have no reference to an individual patient. Like look at G1, statistical information that does not implicitly or explicitly identify any individual VA patient. And nearly every one of the other exceptions is similarly worded. So it seems to me that even if such records existed, they would not by name Mr. Norvell, and therefore they would never be findable for you to consider because the only ones that don't count as confidential are sort of more statistical compilation type things that don't reference individuals. With respect, Your Honor, you are correct in that characterization. But they still may have some relevance to the issue. Right, but how would you be able to find which ones could possibly be referred to him? They could be relevant to the type of procedures that were done at that facility, that type of thing. Trying to wrap up, the point here is that the discretion that this court has should be exercised because there's no other way to get at this issue and this kind of conduct regarding the duty of looking for these records. All rise.